*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* TURNER/TROGDEN, Minors.

UNPUBLISHED
February 13, 2026
12:13 PM

No. 374929
Muskegon Circuit Court
Family Division
LC No. 18-000825-NA

Before: SWARTZLE, P.J., and MALDONADO and ACKERMAN, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to the minor children, OT, AT, and HT, under MCL 712A.19b(3)(c)(*i*) and (*ii*), (g), and (j). We affirm.

## I. BACKGROUND

The instant proceedings began in March 2023, when the Department of Health and Human Services (DHHS) petitioned for removal of the minor children from respondent's care.[1] The petition alleged longstanding substance-abuse issues, including respondent's history of having five children removed from her care in California. It further alleged that in January 2023, police were called because of concerns about respondent's behavior. An incident report had described respondent as stumbling, unable to change her child's diaper, and rough and careless with OT to the point that officers ordered her to hand OT to someone else. Respondent was transported to the hospital; on the way, she attempted to exit the moving vehicle and had to be restrained. At the hospital, she continued to be combative, requiring restraint, and tested positive for amphetamines, benzodiazepine, cocaine, and THC. The petition also cited respondent's history of domestic violence.

---

[1] AT and OT's father released his parental rights at the termination hearing and is not a party to this appeal. HT's putative father was deceased at the time of the proceedings. All references to "respondent" in this opinion are therefore to respondent-mother.

At the March 2023 preliminary hearing, the trial court authorized the petition and removed the children from respondent's care. At adjudication, respondent admitted that the home was an unfit place for the children to live because of parental drunkenness. As a factual basis for the plea, respondent testified that she had previously had a neglect or abuse case related to methamphetamine use and acknowledged ongoing substance-abuse issues that placed the children at risk of harm.

Over the ensuing months, the trial court conducted multiple dispositional review hearings, and respondent participated in services addressing parenting skills, substance abuse, emotional stability, and domestic violence. Despite periods of engagement, respondent continued to struggle with sobriety and did not demonstrate sustained benefit from services. During the reporting period preceding the September 30, 2024 dispositional review hearing, respondent had three positive drug screens for amphetamine, methamphetamine, THC, and cocaine. Moreover, she did not participate in drug screens after August 28. Although respondent reported that she continued to participate in Alcoholics Anonymous and Narcotics Anonymous meetings, she did not engage in additional recommended therapeutic services during this period.

In October 2024, petitioner filed a petition to terminate respondent's parental rights, alleging that despite extensive services, respondent failed to benefit and that the barriers to reunification—including substance abuse, unstable housing and employment, and domestic violence concerns—continued to exist. Petitioner further alleged that the children had been in care for approximately 17 months and that there was no reasonable likelihood that respondent would rectify the conditions within a reasonable time.

The trial court held the termination hearing on February 18, 2025. Before testimony began, respondent moved for an adjournment, arguing that her current counsel—who had been appointed no later than January 23—required additional time because prior counsel had not filed a witness list. Respondent's counsel indicated that she had contacted prior counsel, and prior counsel stated that respondent had not provided her a witness list. When asked to substantiate her claim that she had supplied witness information to her prior attorney, respondent stated that she recently obtained a new phone and would need to contact her cell-phone carrier to retrieve those records. Respondent's counsel suggested that respondent's own testimony could address parenting issues and acknowledged that testimony from parenting-time supervisors would likely be of limited relevance because parenting time had been suspended for months. The trial court denied the request and proceeded with the hearing.

The court heard testimony from a foster-care worker, a foster-care case manager, and respondent. At the conclusion of the hearing, the trial court found that statutory grounds for termination had been proven by clear and convincing evidence. Although the court did not expressly identify the statutory grounds in its oral opinion or written order, its findings tracked the language of MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). The court found that more than 182 days had passed since the initial disposition order, that respondent failed to rectify the conditions that led to adjudication, and that there was no reasonable likelihood she would do so within a reasonable time. The court detailed the extensive services provided, including case management, transportation assistance, parenting time, the Parent Support Program, counseling, domestic-violence classes, the Supportive Visitation Program, drug screens, psychological evaluation,

substance-abuse assessment and treatment, housing assistance, and couples counseling. It concluded that virtually every available service had been offered.

The trial court further found a reasonable likelihood that the children would be at risk of harm if returned to respondent's care. Although acknowledging respondent's love for her children, the court expressed concern about her failure to benefit from services, lack of consistency in providing proper care and custody, and avoidance of drug screens and home visits. The court also noted that OT's medical issues improved after removal.

Finally, the court found by a preponderance of the evidence that termination was in the children's best interests, citing their young ages, lack of a meaningful bond with respondent, and need for permanency and stability. The court relied on caseworker testimony and the lawyer-guardian ad litem's (LGAL) recommendation.

This appeal followed.

## II. ADJOURNMENT

Respondent argues that the trial court abused its discretion by denying her request for an adjournment to subpoena witnesses. We disagree.

A trial court's decision to grant or deny a respondent's motion for an adjournment is reviewed for an abuse of discretion. *In re Jackson*, 199 Mich App 22, 28; 501 NW2d 182 (1993). "An abuse of discretion occurs if the decision falls outside the range of principled outcomes." *In re Piland*, 336 Mich App 713, 733; 972 NW2d 269 (2021).

Under MCR 3.923(G), "[a]djournments of trials or hearings in child protective proceedings should be granted only (1) for good cause, (2) after taking into consideration the best interests of the child, and (3) for as short a period of time as necessary." "[T]o find good cause for an adjournment, a legally sufficient or substantial reason must first be shown." *In re Utrera*, 281 Mich App 1, 11; 761 NW2d 253 (2008) (quotation marks omitted). "An adjournment may be granted on the ground of unavailability of a witness or evidence only if the court finds that the evidence is material and that diligent efforts have been made to produce the witness or evidence." MCR 2.503(C)(2).

Respondent failed to establish good cause. She provided no affidavits, witness lists, or proffer demonstrating that the proposed testimony was material or outcome-determinative. Nor did she show diligent efforts to secure the witnesses. Respondent did not identify when she allegedly provided witness information to prior counsel, whether she followed up on those efforts, or why no witness list was filed. Although new counsel was appointed approximately 26 days before the hearing, the record does not reflect that respondent raised the issue of witnesses before the hearing. Given the absence of a showing of diligence or materiality, the trial court acted within its discretion in denying the request for an adjournment.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Respondent argues that her prior counsel was ineffective for failing to subpoena witnesses on her behalf. "To preserve the issue of whether counsel rendered ineffective assistance, the

defendant must move for a new trial or evidentiary hearing in the trial court or move for remand on appeal." *In re LT*, 342 Mich App 126, 133; 992 NW2d 903 (2022). Because respondent did not do so, "this Court's review is limited to mistakes apparent on the record." *Id*. (quotation marks omitted).

To establish an ineffective-assistance-of-counsel claim, respondent must show "(1) counsel's performance was deficient, falling below an objective standard of reasonableness, and that (2) the deficient performance prejudiced the respondent." *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016). "The effective assistance of counsel is presumed, and a party claiming ineffective assistance bears a heavy burden of proving otherwise." *In re Casto*, 344 Mich App 590, 612; 2 NW3d 102 (2022). "The Court cannot substitute its judgment for that of counsel's on matters of litigation strategy, and counsel's performance must be judged based on the knowledge, expertise, and information reasonably available when counsel formulated and implemented the litigation strategy." *Id*. To establish prejudice, a party "must show that but for counsel's deficient performance, a different result would have been reasonably probable." *Id*. at 621 (citation omitted).

Respondent made no offer of proof regarding the substance of the proposed witnesses' testimony or how it would have affected the outcome. Without such a proffer, she cannot overcome the presumption of effective assistance. Even assuming deficient performance, respondent failed to establish prejudice given the extensive evidence of unresolved substance abuse, lack of progress despite prolonged services, and ongoing concerns regarding parenting ability. The claim of ineffective assistance therefore fails.

## IV. BURDEN OF PROOF

Respondent contends that the trial court improperly shifted the burden to her to prove her sobriety. The record does not support this claim.

"Child protective proceedings are generally divided into two phases: the adjudicative and the dispositional." *In re KV Minor*, ___ Mich App ___; ___ NW3d ___ (2025) (Docket No. 374236); slip op at 4 (citation omitted). "The adjudicative phase determines whether the court may exercise jurisdiction over the child." *Id*. (quotation marks omitted). "If the court acquires jurisdiction, the dispositional phase determines what action, if any, will be taken on behalf of the child." *Id*., quoting *In re Brock*, 442 Mich 101, 108; 499 NW2d 752 (1993). Except in cases involving aggravating circumstances, petitioner "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). "While the petitioner has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Atchley*, 341 Mich App 332, 339; 990 NW2d 685 (2022) (cleaned up).

Viewed as a whole, the record demonstrates that the trial court did not place the burden of proof on respondent. At the conclusion of the termination hearing, the trial court found by clear and convincing evidence that statutory grounds for termination existed, including that there was a reasonable likelihood the children would be harmed if returned to respondent's care and that respondent had failed to benefit from extensive services. In reaching those conclusions, the trial

court relied on evidence presented by petitioner, including testimony from a foster-care worker and a foster-care case manager regarding respondent's continued substance-abuse concerns, lack of progress, and unresolved barriers to reunification. The trial court also detailed the numerous services offered to respondent and explained why those services had not resulted in meaningful improvement. Nothing in the trial court's findings suggests that termination was ordered because respondent failed to prove her fitness.

Respondent's reliance on isolated statements encouraging her to "show" progress, including compliance with drug screening, is misplaced. Although petitioner bears the ultimate burden of proof, it is not improper for a trial court to consider a parent's participation in services or lack of progress during the pendency of the case. Indeed, a respondent must "demonstrate that they sufficiently benefited from the services provided." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). Nor did the trial court improperly shift the burden by considering testimony regarding missed drug screens or limited access to the home. The court was permitted to draw reasonable inferences from the evidence, which included multiple positive drug screens, extended periods of noncompliance with screening, unresolved parenting concerns, and respondent's lack of progress over a prolonged period. Accordingly, respondent's burden-shifting argument is without merit.

## V. BEST INTERESTS

Respondent argues that the trial court clearly erred by finding that termination was in the children's best interests. We disagree.

We review the trial court's best-interests determination for clear error. *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 272-273 (citation omitted).

At the best-interest stage, the focus of the inquiry "is on the child, not the parent." *In re MJC*, 349 Mich App 42, 62; 27 NW3d 122 (2023). A trial court may consider various factors, including:

> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (quotation marks and citation omitted).]

The length of time the child has been removed from the parent's care and the likelihood of reunification within the foreseeable future are also relevant considerations. See *Frey*, 297 Mich App at 248-249.

The trial court did not clearly err by finding that termination was in the children's best interests. After overseeing this case from its inception, the court found that respondent lacked a meaningful bond with the children and that given their young ages, they required permanency and

stability. The court further noted a high likelihood that the children would be adopted by their fictive-kin placement, which would allow them to remain together as siblings.

The record also reflects that the children had been removed from respondent's care for nearly two years, and HT had previously been removed. Respondent continued to struggle with substance abuse, failed to demonstrate the ability to provide proper care and custody, and was never approved for unsupervised parenting time. By contrast, the children's caregiver met their needs, and the children were thriving in placement. OT's medical concerns decreased, and AT and HT were happy and attending school. These facts demonstrate the advantages of the children's placement over respondent's care.

Finally, although respondent asserts that a juvenile guardianship was a viable alternative, the LGAL represented that the placement was no longer open to guardianship. Moreover, the children appeared to benefit from the suspension of parenting time, further undermining respondent's claim that guardianship would serve their best interests. Under these circumstances, the trial court did not clearly err by determining that termination, rather than guardianship, was in the children's best interests.

Affirmed.

/s/ Brock A. Swartzle
/s/ Allie Greenleaf Maldonado
/s/ Matthew S. Ackerman